UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GILMAN ALFRED ROY VELO III, et al.,

          Plaintiffs,

   v.

UNIVERSAL TRACING SERVICES,
INC.; and RON LARSEN a/k/a RONALD
LARSEN,

          Defendants.

C14-587 TSZ

ORDER

THIS MATTER comes before the Court on plaintiffs' renewed motion for default judgment, docket no. 60.  Having reviewed all papers filed in support of the motion and the relevant portions of the record, the Court enters the following order.

**<u>Background</u>**

In April 2014, plaintiffs commenced this action against United Collection Service, Inc. and Karen Danieli, alleging violations of various provisions of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692b(1)-(2), 1692c(b), 1692d(6), 1692e(11), 1692(f), and violation of Washington's Consumer Protection Act ("CPA").  Compl. (docket no. 1).  In November 2014, plaintiffs joined as defendants Universal Tracing Services, Inc. ("UTSI") and John Doe.  <u>See</u> Am. Compl. (docket no. 14).  Pursuant to a stipulation of the relevant parties, plaintiffs' claims against United Collection Service, Inc. and Karen Danieli were dismissed with prejudice.  <u>See</u> Order

(docket no. 18).  In July 2015, plaintiffs identified Ron Larsen, also known as Ronald Larsen, as the "John Doe" defendant, and initiated attempts to serve him in Canada.  *See* 2d Am. Compl. (docket no. 31).  Plaintiffs were eventually granted leave to, and aver that they did, effect service on Larsen by domestic certified mail, international registered mail, and e-mail.  *See* Order (docket no. 42); Decls. of Serv. (docket nos. 43, 44, & 45).

The operative pleading asserts the same FDCPA and CPA claims against UTSI and Larsen that were alleged against United Collection Service, Inc. and Karen Danieli. *See* 2d Am. Compl. (docket no. 31).  The operative pleading also includes claims against UTSI and Larsen for outrage and negligence.  Default has been entered against both Universal Tracing Services, Inc. and Ron Larsen.  *See* Order (docket no. 25); Order (docket no. 48).  In June 2016, the Court denied a previous motion for default judgment against UTSI and Larsen because plaintiffs had failed to link either defendant to the debt collection activities at issue and did not provide sufficient, non-speculative evidence to support their claim for damages related to lost home-buying opportunities.  *See* Minute Order (docket no. 58).  Plaintiffs now renew their request for default judgment, offering additional evidence concerning UTSI and Larsen, but foregoing the claim for damages based on the increase in median home prices in Snohomish County, as well as in interest rates, over the period at issue.

**Discussion**

**A.    Fair Debt Collection Practices Act**

Although plaintiffs have bolstered their factual allegations against UTSI and Larsen, they have still not provided sufficient proof to warrant default judgment as to

1   their various FDCPA claims.  According to Shawna Velo, sometime after April 22, 2013,

2   she received a call from a man identifying himself as Detective Parker from the Edmonds

3   Police Department.  S. Velo Decl. at ¶¶ 3-4 (docket no. 62).  Detective Parker allegedly

4   stated that mail had been stolen from plaintiffs' mailbox, that he had a suspect named

5   Antoine Jackson in custody, and that he was investigating a possible identity theft.  _Id._ at

6   ¶ 5.  Detective Parker asked Shawna Velo whether her husband knew Antoine Jackson

7   and apparently obtained from her the identity of her husband's employer and plaintiffs'

8   bank account information.  _Id._ at ¶ 6.  On August 5, 2016, plaintiffs' attorney sent

9   Shawna Velo three Internet links to audio recordings of Ron Larsen's voice, and Shawna

10  Velo "identified" Ron Larsen as the person posing as Detective Parker in April 2013.  _Id._

11  at ¶ 7.  At some unspecified time, under unexplained circumstances, approximately

12  $7,400 was taken from plaintiffs' bank account by an unknown person or entity.  _Id._ at

13  ¶ 28; _see_ G. Velo Decl. at ¶ 18 (docket no. 61).

14        Plaintiffs' allegations, which are taken as true in connection with their motion for

15  default judgment, do not establish a violation of the FDCPA.  The FDCPA governs the

16  activities of debt collectors, who are persons using "any instrumentality of interstate

17  commerce or the mails in any business the principal purpose of which is the collection of

18  any debts" or "regularly collect[ing] or attempt[ing] to collect, directly or indirectly,

19  debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The

20  facts set forth in plaintiffs' operative pleading and declarations do not establish that

21  Larsen was engaged in debt collection activities when he impersonated a law

22  enforcement officer.  Larsen/Parker did not mention any debt or seek any payment from

23

ORDER - 3

1   Shawna Velo.  Rather, he used a ruse to gather information with which either funds or an

2   identity could later be stolen.  Such outright thievery is not the focus of the FDCPA.

3   _See_ 15 U.S.C. § 1692 ("It is the purpose of this subchapter to eliminate abusive debt

4   collection practices by debt collectors, to insure that those debt collectors who refrain

5   from using abusive debt collection practices are not competitively disadvantaged, and to

6   promote consistent State action to protect consumers against debt collection abuses.").[1]

7   Plaintiffs' motion for default judgment on their FDCPA claims is DENIED.

8   **B.    Consumer Protection Act**

9          To establish a violation of the CPA, a private plaintiff must prove:  (i) the

10  defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice

11  occurred within a trade or business; (iii) such act or practice affected the public interest;

12  (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal

13  relationship exists between the defendant's act or practice and the plaintiff's injury.

14  _Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co._, 105 Wn.2d 778, 785-93,

15  719 P.2d 531 (1986).  Whether conduct constitutes an unfair or deceptive trade practice

16  within the meaning of the CPA constitutes a question of law.  _Robinson v. Avis Rent A_

17  _Car Sys., Inc._, 106 Wn. App. 104, 114, 22 P.3d 818 (2001).  To qualify, the alleged act

18  must have had the "_capacity_ to deceive a substantial portion of the public."  _Hangman_

19  _Ridge_, 105 Wn.2d at 785 (emphasis in original).  The Court is satisfied that

20  _____

21  [1] Plaintiffs continue to offer no link between Larsen and Jerry Garcia, who did demand payment on a
    debt.  _See_ S. Velo Decl. at ¶¶ 8, 13; _see also_ Minute Order at ¶ 2 (docket no. 58) (observing that a report
22  from the Snohomish County Sheriff's Office indicated that Jerry Garcia was employed by United
    Collection Service, Inc., which is no longer a party to this action, and that he denied impersonating a law
23  enforcement officer).

impersonating a law enforcement officer to obtain financial information has the capacity

to deceive a substantial portion of the public and is actionable as an unfair or deceptive

act or practice.  The bulk of plaintiffs' damages, however, which are for the costs of

therapy, physician visits, and prescription medications, as well as for emotional distress,[2]

are not compensable under the CPA.  *See Frias v. Asset Foreclosure Servs., Inc.*, 181

Wn.2d 412, 430-31, 334 P.3d 529 (2014).  The only actual damages plaintiffs may

recover under the CPA are related to their travel from their home to the Snohomish

County Sheriff's office to report the call from Larsen/Parker.  The Court will award

plaintiffs $8.48, trebled to $25.44, along with reasonable attorney's fees and costs.

C.     **Tort Claims**

    **1.     Outrage**

In Washington, intentional infliction of emotional distress constitutes the same tort

as outrage.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).  Under

Washington law, the elements of the tort of outrage are: (i) extreme and outrageous

conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result

to the plaintiff of severe emotional distress.  *Kloepfel*, 149 Wn.2d at 195; *Dombrosky v.

Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 261, 928 P.2d 1127 (1997)**.**  The claim

must be predicated on conduct that is "so outrageous in character, so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

---

[2] Shawna Velo has indicated that she sought counseling with a therapist named Hemlata Mistry as a result of her interaction with Larsen/Parker.  She suffered feelings of guilt for being gullible, has had difficulty taking care of her children, has panic attacks and a phobia of answering the phone, and experiences exhaustion, depression, and problems in her marriage, as well as distress over not being able to afford a home.  S. Velo Decl. at ¶ 22, 24, 28-29.  Gilman Alfred Roy Velo has also received therapy services from Mistry and states that plaintiffs' marriage has "suffered immensely."  G. Velo Decl. at ¶ 16.

utterly intolerable in a civilized community." _Kloepfel_, 149 Wn.2d at 196; _Dombrosky_, 84 Wn. App. at 261.  Although impersonating a law enforcement officer is illegal, the Court cannot conclude, as a matter of law, as requested by plaintiffs that such behavior rises to the level of being atrocious, utterly intolerable, and beyond all possible bounds of decency, and thus, the Court declines to enter default judgment against UTSI and Larsen/Parker as to plaintiffs' claim of outrage.

### 2.   **Negligence**

The elements of negligence are (i) the existence of a duty; (ii) breach of that duty; (iii) resulting injury; and (iv) proximate causation.  _E.g._, _Ranger Ins. Co. v. Pierce Cnty._, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  Plaintiffs have not established that Larsen/Parker owed them a duty within the meaning of the negligence doctrine.  The duties pleaded in their Second Amended Complaint, namely to not impersonate a law enforcement officer and to not aid or abet unlicensed persons to engage in the business of debt collection, are not duties specifically owed to plaintiffs, but rather to the public generally, and cannot form the basis of a claim for negligence.  _See Taylor v. Stevens Cnty._, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) ("The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general.").  Plaintiffs' motion for default judgment on their tort claims is DENIED.

ORDER - 6

1  **D.     Injunctive Relief**

2          In connection with their request for injunctive relief, plaintiffs make no allegation

3  that UTSI or Larsen/Parker are continuing to contact them or to impersonate law

4  enforcement personnel.  To the contrary, a report by Seattle Police Detective Nathan

5  Janes indicates that, when confronted about an employee's impersonation of a law

6  enforcement officer, Larsen stated "It will never happen again.  Really.  It won't happen

7  again.  I can assure you, it won't.  It won't."  Ex. K to Fullmer Decl. (docket no. 63-6

8  at 9).  The Court is persuaded that an injunction to prohibit Larsen from engaging in

9  criminal activity is unnecessary and unsupported by the record before the Court.

10  **Conclusion**

11          For the foregoing reasons, plaintiffs' renewed motion for default judgment, docket

12  no. 60, is GRANTED in part and DENIED in part.  Plaintiffs' related motion for leave to

13  file an overlength brief, docket no. 59, is GRANTED.  With regard to plaintiffs' claim

14  under Washington's Consumer Protection Act, the Clerk is DIRECTED to enter default

15  judgment in favor of plaintiffs and against defendants Universal Tracing Services, Inc.

16  and Ron Larsen a/k/a Ronald Larsen in the following amounts:  (i) $8.48 in actual

17  damages, trebled to $25.44; (ii) $3,000 as reasonable attorney's fees[3]; and (iii) $1,009.81

18  in costs, for a total of $4,035.25, together with interest pursuant to 28 U.S.C. § 1961 at

19  the rate of one percent (1.0%) per annum from the date of judgment until paid in full.

20

21  _____

22  [3] Plaintiffs' counsel's requested fees of $6,150.00 have been reduced to reflect plaintiffs' limited success.
Plaintiffs did not prevail on their initial motion for default judgment, as to which counsel billed $850 in

23  fees, and obtained judgment on only one of their fifteen claims.

1   The Clerk is further DIRECTED to send a copy of this Order to all counsel of record and

2   to CLOSE this case.

3          IT IS SO ORDERED.

4          Dated this 24th day of March, 2017.

5

6

7          Thomas S. Zilly
           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 8